IN THE UNITED STATES DISTRICT COURT FOR   **FILED**
THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| Office of Strategic Services, Inc.,<br>　　　P.O. Box 5151<br>　　　Herndon, Virginia 20172 | )<br>)<br>) |
| | ) |
| 　　Plaintiff, | ) |
| | ) |
| 　　on behalf of US Smoke & Fire Curtain, LLC,<br>v. | )<br>) |
| | ) |
| Steven Sadeghian,<br>　　　6413 Garnett Drive<br>　　　Chevy Chase, MD 20815 | )<br>)<br>) |
| | ) |
| US Smoke & Fire Services, LLC,<br>　　　6413 Garnett Drive<br>　　　Chevy Chase, MD 20815, | )<br>)<br>) |
| | ) |
| CYSA Development Management Corp.,<br>　　　6413 Garnett Drive<br>　　　Chevy Chase, MD 20815 | )<br>)<br>) |
| | ) |
| 　　　　Defendants. | ) |
| | ) |

**2011 FEB 25  P 12: 39**

**CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA**

JURY DEMAND  1:11cv195
CMH/JFA

---

### Verified Complaint for Unfair Competition, Trademark Infringement, Cybersquatting, and State Law Violations

1.　　Plaintiff  Office of Strategic Services, Inc. ("OSS") brings this derivative action on behalf of US Smoke and Fire Curtain, LLC ("Curtain")  seeking declaratory, injunctive, accounting and damages relief, including reasonable attorneys fees, against defendants Steven Sadeghian, U.S. Smoke and Fire Services LLC ("Services"), and CYSA Development Management Corp. ("CYSA") for unfair competition, trademark infringement, cybersquatting, usurping business opportunities belonging to Curtain, tortiously interfering with Curtain's contracts and business expectancies, breach of fiduciary duty, and conspiracy to divert business

1

expectancies from Curtain to Services, CYSA, and Mr. Sadeghian in violation of Va. Code § 18.2-500.

2.      Plaintiff OSS was at all relevant times, including at the time of the acts or omissions complained of herein, a member of Curtain with a 49% interest in Curtain in accordance with the terms of Curtain's Operating Agreement.

3.      This action is not a collusive one to confer jurisdiction that the Court would otherwise lack.   On July 27, 2010, plaintiff transmitted a letter pursuant to defendant Steven Sadeghian demanding that Curtain pursue claims against defendants Sadeghian, CYSA, and Services.   More than ninety (90) days have elapsed since that demand letter, and defendants Sadeghian and CYSA have taken no action to institute any suit on behalf of Curtain upon the wrongs complained of herein and have taken no action to redress the wrongs complained of herein.   During the ninety (90) day period following the demand letter, Defendants have not rejected the demand letter on behalf of Curtain under Virginia Code §13.1-672.1B2 or § 13.1-1044.

4.      In addition, any requirement for making a demand in this matter is excused because it is futile to expect that Defendants Sadeghian and CYSA would bring action on behalf of Curtain against themselves for their unfair competition against Curtain.  Defendants Sadeghian and CYSA have a direct personal interest in this matter which is in conflict with Curtain's interests because they are directly benefitting from their violations of Curtain's rights.

5.      At all relevant times, Defendants have acted with actual malice toward Curtain or acted under circumstances amounting to a willful and wanton disregard of Curtain's rights.

**Parties**

6.      Plaintiff OSS is a Virginia corporation that is the 49% owner of Curtain, and it brings this suit on behalf of Curtain.  This action is being brought as a derivative action pursuant to Virginia Code § 13.1-1042.

7.      Curtain is a Virginia LLC that is engaged in the marketing and distribution of fire and smoke safety products for buildings including products that are subject to a Distribution Agreement within the United States with Bradley Lomas Electrolok Limited ("BLE"), a British manufacturer of fire and smoke safety products.

8.      Defendant Steven Sadeghian is a resident of Maryland, and is the sole owner of defendant CYSA, a Virginia corporation which is the 51% owner of Curtain.  At all relevant times, Mr. Sadeghian has been the Chief Executive Officer of Curtain, and as such he owes Curtain the duties of good faith, loyalty, and fair dealing.

9.      Defendant Services is a Delaware limited liability company that was organized July 17, 2009 by Defendant Mr. Sadeghian.

10.      Defendant CYSA is a Virginia corporation which is a member of, and the 51% owner of, Curtain.

**Jurisdiction**

11.      This Court has federal subject matter jurisdiction over the federal claims in this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, 28 U.S.C. § 1338(a).

12.      This Court has federal supplemental subject matter jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(c) in that the state law claims are so related to the federal

claims in the action that they form part of the same case or controversy under Article III of the Constitution.

13.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claim occurred in this District, and a substantial part of the property that is the subject of this action is situated in this District, or this is a District in which a defendant (CYSA) may be found and there is no District in which the claim may otherwise be brought.

## Factual Background

14.      Due to recent changes in international building codes incorporating fire and smoke safety requirements, and the fact that the BLE product was approved by Underwriters Laboratories ("UL") in 2009, a business opportunity was created in the United States for the distribution, sale and installation of BLE fire and smoke safety devices.

15.      In early 2009, Defendant Sadeghian and Stewart Christ, President of OSS, discussed this business opportunity, and agreed to jointly pursue it.

16.      To this end, Defendant Sadeghian and Mr. Christ created Curtain which was formed as a Virginia LLC.  Curtain's Operating Agreement between OSS and CYSA (the "Operating Agreement") specifies that the purpose of Curtain is to "market, sell, and distribute smoke and fire curtains in the United States, and to engage in any lawful act or activity."  In fact, one of the initial business purposes of Curtain was to secure and pursue the business opportunities flowing from the Distribution Agreement to sell and to install BLE products within the United States.

4

17.     Mr. Sadeghian became the CEO of Curtain, and his wholly-owned company CYSA, became the 51% owner, and member, of Curtain.   As the CEO of Curtain, Mr. Sadeghian owes Curtain the duty of utmost good faith and loyalty in his dealings with, and on behalf of, Curtain.   Specifically, Mr. Sadeghian has a fundamental fiduciary obligation not to divert corporate opportunities to himself for personal gain because such opportunities belong to Curtain.   He has an undivided duty of loyalty to Curtain, and he cannot place himself in another position which would subject him to conflicting duties, or expose him to the temptation of acting contrary to Curtain's interests.   In particular, as a fiduciary of Curtain, Mr. Sadeghian is entrusted with Curtain's business and cannot make that business an object of personal interest to himself.  Among other obligations the law imposes upon Mr. Sadeghian as its CEO is to pursue business opportunities for Curtain, and not for himself.   To that end, Mr. Sadeghian has an obligation to make full disclosure to Curtain of all business opportunities to which he is exposed so that Curtain can decide whether to pursue them, before Mr. Sadeghian can pursue any such opportunity with the consent of Curtain.

18.     The Operating Agreement also provided that CYSA assumed certain other obligations to Curtain, including, to "provide additional financing for USSFC as required. . . ."

19.     Mr. Christ became the President of Curtain, and the Operating Agreement describes his authority as: "to build the Company's sales network, negotiate and execute dealer and sales representation agreements, coordinate training, deposit receipts, pay invoices, and all other day to day operational aspects of the Company."

20.     The Curtain Operating Agreement provides that CYSA and OSS shall equally share Curtain's profits.  The Operating Agreement further provides that Curtain shall establish and maintain "its own separate bank accounts and accounting books and records."  In accordance

5

with this provision and his responsibility for making deposits, a bank account was opened for Curtain with Mr. Sadeghian and Mr. Christ as signatories.

21.     Curtain entered into an exclusive "Distribution Agreement relating to Smoke and Fire Curtain Products" with BLE dated July 13, 2009 (hereinafter "Distribution Agreement").

22.     Under the Distribution Agreement, Curtain obtained from BLE the contractual right to be the "exclusive distributor to import and to distribute the Products in the [United States]." The Distribution Agreement defines these BLE "Products" as: "Electrically Operated Smoke and Fire Curtains," "Fixed Smoke and Fire Curtains," and "Associated equipment," (hereinafter "Products"), and restricts Curtain from distributing competing products.

23.     The "Products" as to which the Distribution Agreement confers exclusive or non-exclusive rights upon Curtain constitute potential business opportunities for Curtain. At all relevant times, Defendants Sadeghian, CYSA, and Services knew that these Products constitute potential business opportunities for Curtain.

24.     Mr. Sadeghian signed the Distribution Agreement with BLE on behalf of Curtain.

25.     Curtain executed contracts with different dealers ("Dealership Agreements") granting contractual rights to market and to distribute fire and smoke safety products, including the Products covered by the Distribution Agreement with BLE, in different territories within the United States. Mr. Christ was responsible for securing and negotiating the Dealership Agreements.

26.     Defendant Sadeghian formed Services after he signed the Distribution Agreement on behalf of Curtain, without the knowledge or consent of OSS, Mr. Christ, or Curtain.

6

27.      In 2010,  Curtain learned that:

a.      Services has, without notice to or approval of Curtain, entered into a separate agreement with BLE regarding BLE's products;

b.      Services has engaged in the marketing and sales of BLE products, including those Products as to which Curtain has exclusive and non-exclusive rights under the Distribution Agreement, all of which represent business opportunities of Curtain,  in direct competition with Curtain and its Dealers;

c.      Services has solicited more than one Curtain Dealer to participate in the installation of BLE products independently of Curtain, including providing quotes for the direct sale of BLE products to Curtain dealers through Services, which has led to expressed concerns  among Curtain's Dealers as to their contractual rights with Curtain;

d.      Services  has created a nearly identical logo and website to that of Curtain without notice to, or the consent of, Curtain, copying  whole pages verbatim from the Curtain website for display on the Services website, causing further likelihood of confusion between the two websites;

e.      Services  has used Curtain's proprietary  promotional and product material, without notice to, or the consent of, Curtain;

f.      Defendants have infringed upon and usurped the intellectual property of Curtain by:

i.      creating a similar and confusing domain name "ussmokeandfire. com" on or before March 31, 2010, which is essentially the same as Curtain's domain name of "ussmokeandfirecurtain.com" that was created in or before 2009; this domain name was obviously intended to divert web traffic from Curtain's domain and website to that of Services by the simple subtraction of the term "curtain," thereby constituting a wholesale inclusion of Curtain's domain name into defendants;

ii.      by launching in 2010 a website for Services that used substantially the same logo and content that was present on Curtain's website that was launched in April 2009, including references to Curtain's products and descriptions such as the term "Atrium Shield TM" that had previously used on Curtain's website, and which had been in use in Curtain brochures as early as March 2010;

iii.      filing applications  with the U.S. Patent and Trademark Office ("USPTO") similar in July and August 2010 for registration of confusingly similar trademarks "US Smoke & Fire Protecting the People," (USPTO Serial No. 85095274), "Atrium Shield," (USPTO Serial No. 85095275) and "Smoke Shield" (USPTO Serial No. 85098552), notwithstanding the fact that they are similar to trademarks owned and used by Curtain, including marks for which Curtain had previously in March and April 2010 submitted applications with the PTO for registration identified as

8

"US Smoke and Fire Curtain"'( USPTO Serial; No. 77957241) and "Elevator Shield" (USPTO Serial No. 85006625);

iv.    As part of his trademark applications on behalf of Services, Mr. Sadeghian declared  that "he/she believes the applicant to be the owner of the trademark/service mark sought to be registered,…, he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely,…, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true;"

v.    At all relevant times, defendants knew that Curtain had previously used Curtain's marks, domain, and website for goods Curtain had placed in commerce for bona fide commercial purposes; and,

vi.    Curtain's marks were created to, and have created, with the relevant consuming public, a link between Curtain and the products it sells or distributes for sale, and Defendants are attempting to take advantage of this by directly copying Curtain's marks.

9

g.      Defendants' use of a confusingly similar domain name, logo, website, and

trademark applications is intended by it to divert customers away from the

websites of Curtain and Curtain's Dealers to become customers of

Services, for the economic benefit of Services, Sadeghian, and CYSA, and

in so doing defendants have acted with the bad faith intent to profit from

Curtain's domain name, logo, website, and trademarks.

29.     Because defendant Sadeghian has administrative control of Curtain's email

system, he can, and has diverted, direct inquiries to Curtain from potential Curtain customers

into opportunities for Services to make bids or proposals.  By taking advantage of the

confidential business information of Curtain, without disclosure to, or the consent of Curtain, for

the benefit of Services, defendants Sadeghian and CYSA breached their duties to Curtain.

30.     For example, on or before May 21, 2010, representatives of a Hospital project

contacted Curtain with a request for a proposal for fire curtains, which was received by

defendant Sadeghian, but he diverted this opportunity to Services without notice to, or the

consent of, Curtain.   On May 21, 2010, Services submitted a proposal to the Hospital project

representatives providing prices for Fire Curtain-equipment-- equipment that is clearly subject to

the exclusivity provisions of the Distribution Agreement between Curtain and BLE.   A copy of

this Services proposal is attached as Exhibit 1, and is incorporated herein by reference.  By

proposing to supply fire curtains that were the subject of the Distribution Agreement, defendant

Sadeghian and Services interfered with the Distribution Agreement Curtain has with BLE.   The

Hospital representatives subsequently, in 2011, contacted Curtain as a result of its website, and

sought additional product information based upon this Services proposal of May 2010.  The

Hospital representatives demonstrated the likelihood of confusion by their actual confusion about

10

whose products they were dealing with by contacting Curtain for this information about the Services proposal of May 2010.

31.     With this, as with all other opportunities complained of herein, defendant Sadeghian failed to disclose the opportunity failed to tender the opportunity to Curtain, and failed to obtain Curtain's consent to exploit the opportunity.

32.     Another example of the direct competition by Services against Curtain and its Dealers involved a general contractor who contacted Curtain first for a bid on a courthouse project.  Mr. Sadeghian received the inquiry, and responded instead on behalf of Services with a bid specification from Services, without disclosing to Curtain the fact that he had received the inquiry and was going to make a bid on behalf of Services.   As is common, the building owner required the general contractor to identify three manufacturing sources for the smoke containment system.   When Mr. Sadeghian responded with specifications for Services, he identified the following three manufacturing sources:  Services, CYSA, and "MCC."  MCC is the acronym for Mr. Clean Car Wash, an automobile cleaning company owned by Mr. Sadeghian.  MCC is not otherwise uninvolved in this line of business, and its full name of Mr. Clean Car Wash would reflect that fact, but Mr. Sadeghian did not disclose this full name to the building owner, choosing instead to identify "MCC" as the third source of equipment.  A copy of this document is attached as Exhibit 2 and is incorporated herein by reference.   Thus, not only did Mr. Sadeghian fail to tender this opportunity to Curtain—the entity contacted for this opportunity—he attempted to prevent Curtain from participating in this opportunity by obliquely pointing the general contractor to Mr. Sadeghian's car wash company, MCC, as a potential source of BLE products that otherwise has no capacity to meet the customer's specifications or

requirements.  Further, Mr. Sadeghian was similarly identifying CYSA as a potential source, but not Curtain.

33.     Curtain's Dealers are an important means through which Curtain identifies and obtains business opportunities.   By directly competing with Curtain's Dealers for the same business opportunities, defendants Sadeghian and CYSA usurp these business opportunities and Services interferes with Curtain's business expectancies.

34.     For example, in the fall of 2010 a Curtain Dealer contacted Curtain about an opportunity to bid on a project in the state of Washington, and obtained an equipment quote in October 2010 from Curtain for the SD60 smoke curtain.  The Dealer successfully used this quote against competitors offering different products from different manufacturers.  After being orally notified by the customer that the Dealer would be using the Curtain Dealer's quote, the customer informed the dealer in February 2011 that it instead bought the same produce "directly from US Smoke and Fire," the very same domain name that Services has used to divert Curtain's business to Services.  The customer confirmed to the Dealer that the "US Smoke and Fire" from which it "directly" purchased the SD60 product was Services.  In other words, Services and Sadeghian, diverted this business opportunity from Curtain by underbidding Curtain's Dealer for the same equipment.  In so doing, Defendants Sadeghian and Services harmed Curtain and its business relations with its Dealer.

35.     In addition, Defendant CYSA has breached its obligations under the Operating Agreement to finance Curtain's ongoing operations, including the failure to pay for marketing and sales costs, dealer training and support costs, test reports, and necessary industry certifications and registrations, providing insufficient and inadequate technical support, and terminating Curtain's Manager of Customer Service.

12

36.     In July 2010, Defendant Sadeghian evicted Curtain and its President from Curtain's office space that was being furnished in a building owned directly or indirectly by defendant Mr. Sadeghian and which is managed by defendant CYSA.   Thus, while CYSA had a contractual obligation to finance Curtain, including its office space, it instead evicted Curtain from the office space CYSA managed.

35.     CYSA's breach of its obligation to finance Curtain is intended to harm Curtain in its reputation, trade, and business, so as to facilitate the diversion of Curtain's opportunities, contractual rights, and business expectancies to Defendants.   For example, Services has been registered with a variety of industry and trade organizations, but CYSA has refused to pay for similar registrations and certifications for Curtain.

36.     Furthermore, defendant Sadeghian has taken affirmative steps to harm Curtain's business.   For example, in January 2011, Curtain was informed by its national product shipper that its account was closed by Mr. Sadeghian, who informed the shipper that he was the owner of Curtain.   Because Curtain relies upon this account to ship its products, including for time sensitive product orders, this was intended by defendant Sadeghian to interfere with Curtain's business relations with its Dealers and with its customers.

37.     Defendant Sadeghian has also solicited Curtain Dealers to install BLE products on behalf of Services.

38.     Defendant Sadeghian has created a separate bank account for Curtain with himself as its sole signatory, has effected a change of address for the account to his home residence in Maryland as the address of the bank customer Curtain, and he has excluded Curtain and Mr. Christ from access to the records and monies therein.   In addition, on several occasions,

he has directed Curtain dealers to send their payments to Curtain at this same home address in Maryland.

39.      Even though the Distribution Agreement signed by Mr. Sadeghian on behalf of Curtain plainly states that Curtain has contractual rights to install BLE products, Mr. Sadeghian has since taken the position that Curtain has no such rights, and that only Services has that right. In so doing, Mr. Sadeghian has usurped a Curtain business opportunity that he personally acknowledged by signing the Distribution Agreement.

40.      Curtain has requested Mr. Sadeghian to provide it with information regarding Service's business activities, including Service's dealings with BLE, but he has refused to do so.

41.      Curtain has sought an accounting from Mr. Sadeghian of his use of Curtain's name, assets, and business opportunities, but he has declined to do so.

42.      Because Defendant Sadeghian has refused to disclose the actions of the Defendants to Curtain, Curtain has been placed at risk of being in violation of its contractual obligations, and the risk of loss of the business and contractual opportunities that are secured by Curtain's Distribution Agreement and its Dealership Agreements.   As a further direct and proximate result of Mr. Sadeghian's refusal to disclose his actions, Curtain has been unable to sign up any new dealers.  For example, when Curtain refers potential customers to its dealers, they find themselves in competition with Mr. Sadeghian acting on behalf Services.

43.      Defendant Sadeghian has thus created a new company Services that he has placed in active and direct competition with Curtain, thereby breaching his duties to Curtain and diverting Curtain's business opportunities to Services.

14

44.     In addition, defendant CYSA has likewise entered into agreements to provide smoke and fire curtains to customers without notice to Curtain.

45.     Other examples exist of Mr. Sadghian inserting himself into Curtain opportunities. In 2010, a potential customer called directly into Curtain regarding a Veteran's Administration project, which was forwarded to Mr. Sadeghian. At no time thereafter did Mr. Sadeghian tender this opportunity to Curtain. Independently, the Curtain dealer responsible for that territory brought the requirement for this project to Curtain and Curtain authorized the dealer to pursue the opportunity. Mr. Sadeghian subsequently instructed the Curtain dealer that he could not pursue the opportunity because it was being reserved for Services.

46.     In addition, in 2010 BLE obtained approval for a new UL listing for equipment known as UL10D for the SD60SG, which falls within the rights or expectancies of Curtain under the Distribution Agreement, and thus is a business opportunity of Curtain. Mr. Sadeghian directly participated in the UL approval process. Despite this, Mr. Sadeghian failed to disclose this new opportunity to Curtain or to its Dealers.

47.     Because Defendants have concealed, and improperly refused to disclose, their usurpation of Curtain's business opportunities, it is difficult to assess the full amount of damages that Curtain has suffered, and is likely to suffer in the future.

48.     Upon information and belief, Services alone has bid on more than eight million dollars in contracts. Based upon information available to date, Curtain estimates that its damages exceed ten million dollars.

## CLAIMS

### Count One

### Violation of the Anti-Cybersquatting Protection Act,
### 15  U.S.C. §  1125(d)

49.     Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 48 as though set forth herein.

50.     Curtain is the owner of distinctive marks that it has used in commerce, including in the sale or advertising of its products and services, including the marks for which it has applied for registration with the USPTO in early 2010 (i.e., "U.S. Smoke & Fire Curtain Life" and "Elevator Shield," marks identified on its website and in its advertising brochures (i.e., "Atrium Shield TM"), its domain name (www.ussmokeandfireccurtain.com), and its website (www.ussmokeandfirecurtain.com).

51.     Defendants have demonstrated their bad faith intent to profit from Curtain's marks, including by diverting customers and business opportunities from Curtain to themselves by, among other things, using a domain name confusingly similar to a distinctive mark of Curtain.  Defendants have engaged in intentional and direct copying of Curtain's mark, domain, and website for the purpose of diverting customers from Curtain's mark, domain, and website for defendants' profit, in an effort to: (a) deprive Curtain of the benefit of its Distribution Agreement; (b) usurp business opportunities from Curtain; (c) compete unfairly with Curtain and its Dealers; and/or (d) palm off its services and products as those of Curtain.

52.     Defendants have made application for registrations of competing , trafficked in, and commercially used a domain name which is nearly identical or confusingly similar to Curtain's mark, domain, and website.   The defendants' domain name "ussmokeandfire.com" is

16

a virtually identical subset of Curtain's prior domain name of "ussmokeandfirecurtain.com," such that an internet search of defendant's domain name will yield both defendants' and Curtain's websites. Hence, there is a substantial likelihood of consumer confusion, which has been demonstrated by actual consumer confusion described above.

53.     Defendants have made application for competing marks with the Patent and Trademark Office in late July and August of 2010 without disclosing the prior, similar mark applications of Curtain.

54.     As a direct and proximate result of defendants' violation of 15 U.S.C. § 1125(d), Curtain has suffered, and will continue to suffer, damages, including lost business; that defendants' conduct is exceptional, warranting an award of attorney's fees., and an order directing that the domain name be transferred to Curtain pursuant to 15 U.S.C. § 1125(d)(1).

## Count Two
### (Unfair Competition in Violation of 15 U.S.C. § 1125(a))

55.     Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 48 as though set forth herein.

56.     Curtain is the owner of distinctive marks, including the marks for which it has applied for registration in early 2010 (i.e., "U.S. Smoke & Fire Curtain Life" and "Elevator Shield") marks identified on its website and brochures (i.e., "Atrium Shield"), its domain name (www.ussmokeandfireccurtain.com), and its website (www.ussmokeandfirecurtain.com). These marks are distinctive because they are inherently distinctive, have been used and displayed in the sale and advertising of goods and services in commerce throughout the United States, and have acquired a secondary meaning established by multiple direct sales and by multiple sales through an established Dealer network.

57.     Defendants have used words, terms, names, and symbols, and combinations thereof, intending to cause, and actually causing confusion, mistake and deception as to the origins or sponsorship of Defendants' goods, services, or commercial activities.

58.     Curtain has been, and is likely to be, injured in its business by the Defendants' aforementioned actions.

59.     As a factual and proximate cause of Defendants violation of 15 U.S.C. § 1125(a), Curtain has suffered damages, including but not limited to the diversion of business and business opportunities.

## Count Three
### (Trademark Infringement in Violation of 15 U.S.C. § 1114(a))

60.     Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 48 as though set forth herein.

61.     Curtain is the owner of descriptive marks, including the marks for which it has applied for registration with the USPTO in early 2010 (i.e., "U.S. Smoke & Fire Curtain Life" and "Elevator Shield," marks identified on its website and in its advertising brochures (i.e., "Atrium Shield TM"), its domain name (www.ussmokeandfireccurtain.com), and its website www.ussmokeandfirecurtain.com).

62.     Notwithstanding these prior Curtain applications, Defendants Sadeghian and Services have used in commerce, and have subsequently sought registration of confusingly similar marks which are intended to, are likely to, and do cause confusion, mistake, or deception as to the goods or services being offered into commerce, thereby infringing upon Curtain's marks.

63.     Defendants' use of colorable imitations of Curtain's marks is likely to cause confusion among customers.

64.     Defendants' infringement of Curtain's marks has been willful, and with the bad faith intent to divert customers to themselves.

65.     As a factual and proximate cause of Defendants violation of 15 U.S.C. § 1114(a), Curtain has suffered damages, including but not limited to the diversion of business.

66.      As a result of Defendants' willful trademark infringement, Curtain is entitled to recover damages, including those authorized by 15 U.S.C. § 1117(c) for Defendants' profits, Curtain's damages, and the costs of the action.

**Count Four**
**Declaratory Action**

67.     Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 48 as though set forth herein.

68.     Curtain has legitimate contractual rights and business expectancies, including those secured by the Distribution Agreement, the Dealership Agreements, and its marks.

69.     Defendants' actions have interfered with Curtain's contractual rights and business expectancies by improper methods including breaches of fiduciary duty, unfair competition, and trademark infringement.   Among other things, Defendants' actions have caused Dealers to express concerns about the validity and extent of the rights they have obtained from Curtain.

70.     As a direct and proximate cause of Defendants' actions, Curtain is suffering, and will suffer, the diversion of business opportunities from it to Services, CYSA, and Mr. Sadeghian.

71.     Pursuant to 28 U.S.C. § 2201, this dispute represents an actual controversy as to which this Court can and should declare the legal rights of Curtain with respect to its ongoing

business, and the improper competition and interference of Defendants with Curtain's legal rights.

## Count Five
## Tortious Interference with Contractual and Business Expectancies

72.     Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 48 as though set forth herein.

73.     Curtain has, at all relevant times, possessed contractual rights, contractual obligations, and business expectancies with a probability of future economic benefit in the fire and safety equipment sales and installation business. . Curtain's contractual rights and business expectancies include those secured by the Distribution Agreement and the Dealership Agreements, as well as business expectancies from the direct sale and installation of fire safety equipment.

74.     Defendants Services and CYSA have, at all relevant times, known of the aforementioned contractual rights, contractual obligations, and business expectancies of Curtain.

75.     Defendant Sadeghian has, at all relevant times, known of the aforementioned contractual rights, obligations, and business expectancies.

76.     Defendants Services and CYSA have intentionally, and maliciously, interfered with Curtain's contractual rights and business expectancies by improper methods, causing a breach or termination of these rights and expectancies , thereby disrupting them. Defendants Services and CYSA have employed improper methods to do so, including violating 15 U.S.C. §§ 1125 (a), (d), and 1114(a), by diverting business opportunities belonging to Curtain, and by aiding and abetting and inducing the breach of defendant Sadeghian's contractual and fiduciary duties to Curtain.

20

77.     Defendant Sadeghian has intentionally, and maliciously, interfered with Curtain's contractual rights and business expectancies (excluding his employment contract) by improper methods, causing a breach or termination of these rights and expectancies, thereby disrupting them.  Defendant Sadeghian has employed improper methods to do so, including violating 15 U.S.C. §§ 1125(a), (d)  and 1114(a), by diverting opportunities belonging to Curtain, and by breaching his fiduciary duties to Curtain.

78.     As a direct and proximate result of the aforementioned tortious interference by Defendants, Curtain has suffered resulting damages from the disruption of its contractual rights and business expectancy, including lost profits, and lost, diverted, and usurped business opportunities.

## Count Six
## Breach of Contract Against CYSA and Sadeghian

79.     Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 48 as though set forth herein.

80.     Defendant CYSA agreed to finance the operations of Curtain.

81.     In breach thereof, CYSA has consistently failed to provide financing for the operations of Curtain.

82.     CYSA's failure to provide financing for Curtain is a material breach of the Curtain Operating Agreement.

83.     CYSA's breach of its obligation to finance Curtain was intended to prevent Curtain from fulfilling its contractual obligations, and from developing its business opportunities with respect to the Distribution Agreement and the Dealership Agreements.

84.     As the CEO of Curtain, Sadeghian owed contractual duties to Curtain, including the duty of utmost good faith and fair dealing.   In material breach of these duties to Curtain, Sadeghian, individually and as CEO of CYSA, usurped and diverted the contractual rights and business expectancies of Curtain to Services and to himself.

85.     As a direct and proximate result of Defendant Sadeghian's breach of his contractual duties to Curtain, Curtain has suffered damages.   As a direct and proximate result of CYSA's breach of its contractual duties to Curtain, Curtain has suffered damages.

**Count Seven**
**Breach of Fiduciary Duty**
Against CYSA and Sadeghian
Against Services or CYSA for Aiding and Abetting

86.     Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 48 as though set forth herein.

87.     At all relevant times, Sadeghian was an officer of Curtain and owed a fiduciary duty to Curtain.   This duty included the duty of utmost good faith.  Defendant Sadeghian is not entitled to any compensation or profit from Curtain once he became its unfaithful servant.

88.     At all relevant times, CYSA was the majority owner of Curtain and owed a fiduciary duty to Curtain.   This duty included the duty of utmost good faith.  Defendant CYSA is not entitled to any compensation or profit from Curtain once he became its unfaithful servant. In the alternative, Defendant CYSA knew of the fiduciary duties of Defendant Sadeghian to Curtain, knew of his intent to breach his fiduciary duties to Curtain through the usurpation of its business opportunities, and knowingly provided substantial assistance in order to bring about his breach of his fiduciary duty to Curtain.   Defendant CYSA directly enticed and participated in the breaches of fiduciary duty by Sadeghian, for its direct benefit and gain.

22

89.     In breach of their fiduciary duties, CYSA and Sadeghian have usurped corporate opportunities of Curtain, without disclosure  or tender to Curtain, and without the consent of Curtain, for the benefit of themselves and for Services.

90.     Defendant Services knew of the fiduciary duties of Defendant Sadeghian  and of CYSA to Curtain, knew of their intent to breach their fiduciary duties to Curtain through the usurpation of Curtain's corporate opportunities, and knowingly provided substantial assistance in order to bring about their breach of their fiduciary duty to Curtain.   Defendant Services directly enticed and participated in the breaches of fiduciary duty by Sadeghian and by CYSA, for its direct benefit and gain.

91.     As a direct and proximate result of Defendant Sadeghian's breach of his duties to Curtain, Curtain has suffered damages, including the diverted profits of Services and CYSA.

92.     As a direct and proximate result of Defendant CYSA's breach of its fiduciary duties to Curtain, or of its aiding and abetting of Defendant Sadeghian's fiduciary duties to Curtain, Curtain has suffered damages,.including the diverted profits of Services and CYSA

93.     As a direct and proximate result of Defendant Services' aiding and abetting the breaches of fiduciary duty by Sadeghian and CYSA, Curtain has suffered damages, including the diverted profits of Services and CYSA.

94.     As a direct result of Defendants' breach of fiduciary duties or their aiding and abetting same, Curtain is entitled to have them disgorge any benefits they received, and have these benefits vest in Curtain without any benefit flowing to Defendants.. In particular, Defendants should disgorge to Curtain any compensation or profits they obtained from their breaches of fiduciary duty, or their aiding and abetting of these breaches.

23

**Count Eight**
**Statutory Conspiracy**

95.     Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 48 as though set forth herein.

96.     Defendants and MCC have conspired to harm Curtain in its business and property, and to divert the contractual rights and business expectancies of Curtain to themselves, through unlawful acts, including but not limited to the violations of 15 U.S.C. § 1125(d), breach of their fiduciary duties, and tortious interference with business relations. At all relevant times, defendants acted intentionally, purposely, and without lawful justification to injure Curtain's business.

97.     Defendants and MCC have conspired to interfere with Curtain's contractual rights and business expectancies.

98.     Defendants Sadeghian, and Services have conspired to induce a breach of CYSA's fiduciary duties to Curtain.

99.     For the purpose of injuring Curtain's property and business, Defendants and MCC have combined, associated, and mutually undertaken to willfully and maliciously injure Curtain in its reputation, trade, business and profession by the aforementioned means, all in violation of Virginia Code § 18.2-499.

100.    As a direct and proximate result of the aforementioned conspiracy, Curtain has suffered actual and consequential damages, and is entitled under Virginia Code § 18.2-500 to

24

recover three-fold the damages it has sustained, including the loss of profits, and the costs of suit, including a reasonable attorney's fee.

## Count Nine
## Common Law Conspiracy

101.    Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 48 as though set forth herein.

102.    Defendants combined and conspired together, and with MCC, to accomplish the unlawful purpose of diverting Curtain's business opportunities in breach of defendant Sadeghian's contractual duty of utmost good faith to Curtain, and with CYSA's contractual duty of utmost good faith with Curtain.

103.    In furtherance of their conspiracy, defendants purloined important business leads from Curtain and unlawfully used those leads to submit proposals and bids to divert those business opportunities from Curtain to defendants.

104.    As a direct and proximate result of defendants' conspiracy, Curtain has suffered damages.

## Count Ten
## Constructive Trust

105.    Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 48 as though set forth herein.

106.    Defendant Sadeghian's continued retention of his interest in Services is contrary to the principles of equity.

25

107.    The corporate opportunities of Curtain belong to it, but have been and will continue to be diverted to Defendants.   Accordingly, Defendants continued exploitation of Curtain's contractual rights and business opportunities is contrary to the principles of equity.

108.    If Defendants are permitted to retain the diverted corporate opportunities of Curtain, they will be unjustly enriched, receiving benefits that they would not have received but for their breach of their duties.

109.    Accordingly, this Court should impress a constructive trust for the benefit of Curtain upon Defendant Sadeghian's interest in Services, and in the business opportunities of Curtain that have been usurped by Defendants, including any opportunities that have been usurped by defendants Services  and CYSA.

**Count Eleven**
**Injunction**

110.    Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 48 as though set forth herein.

111.    Defendants' continued diversion and usurpation of Curtain's business opportunities and unfair competition with Curtain inflicts irreparable injury upon Curtain for which there is no adequate remedy of law.

112.    As a result, this Court should enjoin Defendants from seeking any business opportunity in fire and safety equipment sales and installation business without first disclosing such opportunity to Curtain and obtaining its written consent.

**Prayer**

Wherefore, OSS on behalf of Curtain seeks a jury trial on all matters subject to a trial by jury, and respectfully pray for an award of damages in the amount to be determined at trial, including Defendants' profits and Plaintiff's damages, which amount shall be trebled under Va. Code. § 18.2-500, plus punitive damages, reasonable attorney's fees and plaintiff's expenses pursuant to Va. Code §§ 131.1—1045 and 18.2-500, the costs of this action, prejudgment interest, disgorgement and declaratory and injunctive relief, and all such relief as this Court deems just and proper.

Respectfully submitted,

Terrance G. Reed
VA Bar No. 46076
Lankford & Reed, PLCC
120 North St. Asaph St.
Alexandria, Virginia 22314
703-299-5000
TGReed@LRFirm.net