**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

```
                              )
OFFICE OF STRATEGIC           )
SERVICES, et al.,             )
                              )
     Plaintiff/               )
     Counterdefendants,       )
                              )
v.                            )     Civil Action No. 1:11-cv-195
                              )
STEVEN SADEGHIAN, et al.,     )
                              )
     Defendants/              )
     Counterclaimants.        )
```

**Memorandum Opinion**

This matter comes before the Court on Defendants Steven Sadeghian ("Sadeghian"), U.S. Smoke & Fire Services ("Services"), and CYSA Development Management Corp.'s ("CYSA") (collectively "Defendants") Motion for Summary Judgment, Office of Strategic Services, Inc. ("OSS" or "Plaintiff") and Stewart Christ ("Christ") (collectively "Counterdefendants") Motion for Summary Judgment, and Plaintiff's Cross-Motion for Summary Judgment.

On February 25, 2011, OSS filed its Complaint asserting eleven separate derivative claims on behalf of US Smoke and Fire Curtain, LLC ("Curtain") against each of the Defendants. OSS and CYSA are the members of Curtain, a Virginia limited

liability company.  Sadeghian owns CYSA and is the CEO of Curtain.  Christ owns OSS and is the President of Curtain.

Bradley Lomas Electrolok ("BLE") is a manufacturer of fire and smoke protection products, the principal categories of which are fire curtains and smoke curtains.  BLE fire curtain products typically begin with an "FC" number.  BLE smoke curtain products typically begin with an "SD" number, the principal product of which is the SD60 smoke curtain.  Fire curtains are intended to provide complete separation from fire zones and entirely close off wall openings, such as doorways, and serve as barriers to fire and hot gas.  Smoke curtains, on the other hand, are mainly used in conjunction with smoke extraction systems and generally do not entirely close off openings.  Rather, smoke curtains are free hanging and used in large open areas such as atriums, lobbies, and shopping malls.

Sadeghian, through his wholly owned company, CYSA, began a relationship with BLE as early as 2003.  Beginning in 2004, Sadeghian worked closely with BLE to build a market for smoke curtains throughout the United States.  During the next five years, smoke curtain installation project sites for CYSA and BLE included the Massachusetts Institute of Technology, University of North Carolina, University of Massachusetts, and Princeton University.

In 2008, Sadeghian, through CYSA and in collaboration with BLE, developed and began using the name US Smoke & Fire Curtain for these projects.  In late 2008 and early 2009, BLE and Sadeghian began discussions about establishing a nationwide network of dealers to sell BLE fire curtain products to dealers around the country for resale.  BLE agreed that CYSA would continue to purchase smoke curtain products outside of the distribution network for installation in its own projects.  In July 2009, BLE further agreed that CYSA would create a separate subsidiary, Services, a Delaware limited liability company, to continue with the ongoing development and purchase of BLE smoke curtain products.

On July 7, 2009, CYSA formed Curtain, a Virginia limited liability company.  In late July 2009, BLE entered into two distribution agreements, one between BLE and Curtain and the other between BLE and Services.  Sadeghian signed the distribution agreements on behalf of both Curtain and Services. The Curtain distribution agreement gave Curtain the "exclusive rights to sell BLE fire curtain products for fire door, fire shutter, and fire replacement applications.  The Distributor will have non-exclusive sales and installation rights for all other fire curtain applications, and all other associated BLE products."  The Services distribution agreement gave Services, a subsidiary of CYSA, the "rights to sell the BLE smoke & fire

curtain products except for fire door, fire shutter, and fire
door replacement applications." This exclusion was identical to
the exclusive distribution rights that BLE had given to Curtain
in its distribution agreement.

Christ prepared and sent Curtain's Dealer Status Report to
BLE on October 28, 2009. In that report, Christ stated that
"[d]ealers are authorized to offer standard products (Ref.
Schedule A, '1. Electrically Operated Automatic Fire Curtaind
and Elevator Shield, 2. Fixed Fire Curtains, 3. Associated
Equipment')." In addition, Christ stated that "[w]e have been
very clear in the presentations and handouts with our Dealers
and Reps that smoke curtains are not part of their Agreement,
but that we are open to working with them on a case-by-case
basis." The Quote Log that Mr. Christ submitted on March 1,
2010 includes only BLE fire curtain products. However, Christ
began to contend in spring 2010 that Curtain could resell BLE
smoke curtains pursuant to Curtain's distribution agreement, a
proposition with which Defendants disagree. Defendants contend
that this was never BLE's understanding of the agreement and
that BLE has never sold any SD60 smoke curtains to or through
Curtain.

Both the Curtain and Services distribution agreements had
an initial period of two years, and BLE had the right to
terminate either or both of those agreements at the end of that

period.  On April 11, 2011, BLE terminated both distribution agreements, effective July 13, 2011.

On April 14, 2009, CYSA purchased the URL <www.ussmokeandfirecurtain.com>.  On March 6, 2009, CYSA entered into a contract with Second Street Web Design, Inc. to build a website using the URL that was purchased by Sadeghian originally in December 2008 and subsequently modified on April 14, 2009 to direct business to CYSA.  The website originally listed Curtain as a division of CYSA.  When a potential customer wanted to purchase a fire curtain, that purchase was sold through Curtain, whereas when a customer wanted a smoke curtain, that purchase was sold through Services.

On March 12, 2010, Christ filed a trademark application for "US Smoke & Fire Curtain Life Safety, Accessibility, Design Freedom," designated by serial number 77/957,241.  Christ filed the application in the name of US Smoke & Fire Curtain LLC and submitted it electronically with a signed declaration that he knew of no other entity that had rights to the name.  However, BLE had used the name BLE Smoke & Fire Curtain and CYSA had used the name US Smoke & Fire Curtain before Christ filed the application.

On approximately June 18, 2010, the examining attorney rejected the application submitted by Christ on several grounds, including that the "US" and "Smoke and Fire Curtain" were merely

descriptive.  In addition, the examining attorney noted that
Christ failed to state a date of first use, failed to submit a
proper specimen, and failed to provide a proper description of
the services provided under the purported mark.  On December 12,
2010, Christ amended the description of services to be creating
distributorships for smoke and fire curtain products.  Despite
the amendment, on February 2, 2011, the examining attorney
issued a final rejection of the application, reaffirming her
belief that the mark US Smoke & Fire Curtain was descriptive.
As of August 5, 2011, the application stands finally rejected
and abandoned because of the applicant's failure to timely
respond to the February 2, 2011 action.

Without the approval of BLE, on April 5, 2010, Christ filed
a trademark application for "Elevator Shield."  However,
according to the BLE distributorship agreement, Curtain and
Services were not permitted to file trademark applications
without BLE's consent.  BLE coined the terms "Elevator Shield"
and "Atrium Shield" in relation to its fire curtain and smoke
curtain products before any party to this lawsuit became
involved with BLE.  Neither the fire curtain that BLE markets as
an elevator shield nor the smoke curtain that it markets as an
atrium shielf features the words "Elevator Shield" or "Atrium
Shield" on the curtains themselves or their packaging.  In
addition, neither CYSA not Services has ever used the terms

"Elevator Shield" or "US Smoke & Fire Curtain Life Safety, Accessibility, Design Freedom" to describe the origin of any goods or services. Finally, even if those terms have been used by any Defendant, it has been in connection with the promotion of Curtain's business.

The Court must grant summary judgment when a party fails to make a showing sufficient to establish the existence of any essential element of the party's case on which that party has the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c). A movant need only show that there is an absence of evidence or support for the opposing party's case. See Celotex Corp., 477 U.S. at 325. If the nonmovant fails to identify specific facts that demonstrate a genuine and material issue for trial, then the Court will grant summary judgment "to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Celotex Corp., 477 U.S. at 324-25); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) (citing Felty, 818 F.2d at 1128).

Counts Four to Eleven of OSS' derivative complaint are
based on the contention that Sadeghian and CYSA, through CYSA's
company, Services, improperly usurped corporate opportunities
belonging to Curtain and improperly competed with Curtain for
such opportunities involving the sale and/or installation of BLE
smoke curtain products.  However, the facts of this case show
that BLE drafted and entered into two separate distribution
agreements with Curtain and Services in July and August 2009,
and specifically divided their respective sales and distribution
rights to avoid overlap or conflict between them.  Curtain had
the right to sell and distribute fire curtain products only,
whereas Services had the right to sell and distribute smoke
curtain products.  As such, there was no competition between
those two companies from the inception of the relationship with
BLE.

Virginia law provides that if there is no corporate
opportunity, then there is no fiduciary duty to breach.  Today
Homes, Inc. v. Williams, 634 S.E.2d 737 (Va. 2006).  In this
case, Curtain did not have the capacity to sell, resell or
install BLE smoke curtains.  Plaintiff alleges that all of the
contractual rights it claims to distribute BLE products were
given to Curtain in Curtain's distribution agreement.  However,
pursuant to the Curtain distribution agreement, BLE would only
sell to Curtain and permit it to distribute its various fire

curtain products. The distribution agreement between BLE and Curtain carefully defined the BLE product that Curtain could buy from BLE and then distribute. In that agreement, Curtain was given the "exclusive rights to sell BLE fire curtain products for fire door, fire shutter, and fire replacement applications. The distributor will have non-exclusive sales and installation rights for all other fire curtain applications, and all other associated BLE products." Thus, Curtain was given certain exclusive and non-exclusive rights to sell BLE fire curtain products, but the distribution agreement did not give Curtain the right to sell or distribute BLE smoke curtain products.

Because Curtain could not engage in the sale, resale, installation or distribution or BLE smoke curtains, Services did not compete with Curtain when and to the extent that Services itself engaged in that activity. Because Curtain was unable to perform the smoke curtain business, it was not possible for Sadeghian, CYSA or Services to have taken or diverted corporate opportunity relating to smoke curtains from Curtain.

To avoid the kind of dispute raised in this case, BLE crafted its distribution agreement with Services to include the right to sell the BLE smoke and fire products "except" for those which were given exclusively to Curtain. Christ recognized this division of rights in his Curtain Dealer Status Report of October 28, 2010. In that report, Christ said that "[w]e have

been very clear in the presentations and handouts with our with
our Dealers and Reps that smoke curtains are not part of their
Agreement, but that we are open to working with them on a case-
by-case basis." Christ's quote logs to BLE through March 2010
contained only fire curtain products. It was not until the
spring 2010 that Christ began to contend that Curtain could
resell BLE smoke curtains. However, the facts show that BLE did
not share this same understanding. If BLE would not sell its
smoke curtains through or to Curtain, then Curtain had no
capacity to perform that work. Services could not have competed
with Curtain for that work, nor could Sadeghian have breached
any duties to Curtain by Services either seeking or performing
that work.

In Counts Two and Three, OSS' derivative claims arise out
of allegations that Defendants violated various provisions of
the U.S. Code dealing with intellectual property which OSS
claims belongs to Curtain. Count Two alleges trademark
infringement and Count Three alleges unfair competition.
However, first, neither OSS nor Curtain owns any of the alleged
marks and therefore lacks standing to sue. Second, Sadeghian
and Services would have the right to use the alleged marks
because rights to the name US Smoke & Fire Curtain are owned by
Sadeghian and CYSA. Further, they were licensed to Services and
Curtain as sister companies. Additionally, the "Shield" marks

asserted by OSS were filed by Christ in violation of the Curtain and Services distribution agreements, which require written approval prior to trademark applications being filed on BLE products. Third, regardless of ownership, the U.S. Patent and Trademark Office ("USPTO") has deemed the US Smoke & Fire Curtain name to be descriptive, and it thus cannot be owned without a showing of distinctiveness.

Section 1114 of the Lanham act imposes civil liability for trademark infringement against

> [a]ny person who shall, without the consent of the registrant, use any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising or any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive (ellipsis?)

15 U.S.C. § 1114.   Section 125 of the Lanham Act imposes civil liability against

> [a]ny person who, or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device . . . or any false designation or origin . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a).

A cause of action for trademark infringement or unfair competition under the Lanham Act requires a plaintiff to prove

that it (1) possesses a mark; (2) defendant used the mark; (3)
defendant's use of the mark occurred in commerce; (4) defendant
used the mark in connection with the sale, offering for sale,
distribution, or advertising of goods and services; and (5)
defendant used the mark in a manner likely to confuse consumers
as to the source or origin of goods or services.  People for the
Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 364 (4th
Cir. 2001); Rosetta Stone Ltd. V. Google, Inc., 730 F.Supp.2d
531, 540 (E.D. Va. 2010); see also Synergistic Intern., LLC v.
Korman, 470 F.3d 162, 170 (4th Cir. 2006) (In order to prevail
on claims of trademark infringement and unfair competition under
the Lanham Act, a plaintiff is obliged to show the court that
'it ha[d] a valid, protectable trademark and that the
defendant's use of a colorable imitation of the trademark is
likely to cause confusion among consumers'") (quoting Lone Star
Steakhouse & Saloon v. Alpha of Virginia, Inc., 43 F.3d 922, 930
(4th Cir. 1995)).

Plaintiff's Complaint alleges the existence of five marks:
"Elevator Shield," "U.S. Smoke & Fire Curtain Life Safety,
Accessibility, Design Freedom," "Atrium Shield TM" [sic], "its
domain name" www.ussmokeandfirecurtain.com and "its website"
www.ussmokeandfirecurtain.com.

OSS, without the approval of BLE and without the knowledge
of CYSA and Sadeghian, applied for and received a federal

registration for the mark "Elevator Shield" in International
Class 017 for "electronic alarm controlled smoke partition
system comprising retained fire rated curtain material used in
buildings to seal elevator hoistway openings and lobbies from
the passage of smoke."  The application was registered as U.S.
Reg. No. 3,897,681.  However, Plaintiff obtained the mark in
violation of Curtain and BLE's distribution agreement.  That
agreement stipulates that "[t]he Distributor acknowledges
further, that is shall acquire no right, title, or interest in
any of the marks or any additional trademark which may be
developed unless specifically granted such pursuant to the terms
of a separate license agreement."  Because Plaintiff did not
coin the term, was not the first to use it, and applied for and
obtained its Elevator Shield registration in violation of the
distribution agreement between Curtain and BLE, the mark is
invalid and cannot be the basis for an infringement claim.

Plaintiff also asserts infringement of its pending
application, Serial No. 77/957,241 for "US Smoke & Fire Life
Safety, Accessibility, Design Freedom" in International Class
035 for "distributorships featuring smoke and fire curtain
products and systems."  Plaintiff again filed its application
without the consent of Sadeghian.  Because Plaintiff does not
have a federal registration for this mark, Plaintiff must rely

on common law service mark rights in order to assert a claim of infringement against Defendants.

In order to succeed on its claim, Plaintiff must establish that it had priority based on its use of the mark.  See, e.g., Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992); Emergency One, Inc. v. American Fire Eagle Engine Co., Inc., 332 F.3d 264, 267-68 (4th Cir. 2003); Perini Corp. v. Perini Const. Inc. 915 F.2d 121, 124-25 (4th Cir. 1990).  However, as shown by Plaintiff's service mark application, the listed date of first use and date of first use in interstate commerce is April 29, 2009, which is after the date on which <www.ussmokeandfirecurtain.com> launched.  The website was registered before Plaintiff's alleged date of first use and date of first use in interstate commerce and is owned by CYSA rather than by Plaintiff.  The facts show that CYSA, rather than Plaintiff, had the first use and first use in interstate commerce.  Indeed, CYSA paid for the registration of the website and contracted with Second Street Web Design to develop and launch the website.  As such, any claim that Plaintiff may have to common law service mark rights is inferior to that of Defendants.  Additionally, U.S. Smoke & Fire Curtain was a division of CYSA development until July 6, 2009.  The initial website homepage for Curtain referred to the organization as "U.S. Smoke & Fire Curtain, a division of CYSA Development."

There was no transfer of intellectual property from CYSA to Curtain in a manner that would allow Curtain to acquire ownership of intellectual property belonging to CYSA.

Further, the Court finds that the service mark "U.S. Smoke & Fire Curtain Life Safety, Accessibility, Design Freedom" is merely descriptive. Plaintiff filed its application on March 12, 2010. After attempting to correct certain deficiencies listed in a June 18, 2010 Office Action, Plaintiff's application was again rejected because it failed to file a required disclaimer. In a second Office Action, the Trademark Examining Attorney observed that the terms "US" and "Smoke & Fire Curtain" are merely descriptive of the services for which Plaintiff seeks registration. The Trademark Attorney required that Plaintiff "disclaim the descriptive wording 'US' and 'Smoke & Fire Curtain'" apart from the mark as shown because it merely describes the geographic scope of the services with "US" and the featured goods with "Smoke & Fire Curtain."

For these reasons, the only rights to which Plaintiff could be entitled – if the application is in fact granted – would be to the phrase "Life Safety, Accessibility, Design Freedom." However, again, any rights to this phrase would be inferior to Defendants' rights to the phrase because of Defendants' prior use. In addition, the Court finds no evidence to support the proposition that Defendants used this truncated version of the

applied-for mark apart from business conducted on behalf of
Curtain.

The third mark that Plaintiff asserts is that of "Atrium
Shield TM." However, similarly, the distribution agreement with
BLE prevents the application for and the registration of
trademarks for the names of BLE products, including BLE's Atrium
Shield and Elevator Shield. Additionally, the BLE product sold
for use in atria does not display the term "Atrium Shield"
anywhere on the product of packaging. Rather, it is a term used
merely as a marketing tool to sell smoke curtains for use in
atriums. Regardless, any trademark that Plaintiff may claim
with respect to the term "Atrium Shield" is merely descriptive
and lacks the inherent distinctiveness.

Finally, Plaintiff asserts the domain name and website,
<www.ussmokeandfirecurtain.com>. However, CYSA, rather than
Plaintiff, is the owner of that domain name. Any rights
resulting from the registration and use of the domain name and
launching of the website would first be granted to its
registrant and owner, CYSA. Additionally, as noted by the
USPTO, "US" is merely descriptive of the geographic scope of
Plaintiff's services and "Smoke & Fire Curtain" is merely
descriptive of the products that Plaintiff purports to offer.

Plaintiff alleges cybersquatting in Count One of its
Complaint. Under the Anticybersquatting Consumer Protection Act

("ACPA"), a person is liable to the trademark owner if that person (1) registers or uses a domain name "identical or confusingly similar" to a distinctive trademark and (2) has a "bad faith intent to profit" from that trademark.  15 U.S.C. § 1125(d)(1)(A)(o)-(ii).  "A prerequisite for bringing a claim under the [ACPA] is establishing the existence of a valid trademark and ownership or that mark."  Retail Services, Inc. v. Freebies Publishing, 364 F.3d 535, 549-50 (finding that a trademark registrant had no ACPA claim because it did not own a valid trademark).  As discussed above, Plaintiff does not own any valid trademarks and therefore fails on this Count.

On March 24, 2011, Defendants filed seventeen counterclaims against OSS and Christ ("Counterdefendants").  Defendants filed these counterclaims against OSS and Christ, rather than against Curtain, on whose behalf the original claims were derivatively filed.  The first seven counterclaims are intellectual property claims, and the remaining ten are state law claims.

CYSA is a defendant seeking judgment against Curtain with respect to the original claims filed in this case.  At the same time, CYSA purports to represent Curtain in pursuing its own counterclaims.  The Supreme Court of Virgnia has held that entity owners with interests antagonistic to their entity cannot simultaneously represent it in a derivative action.  Jennings v. Kay Jennings Family Partnership, 659 S.E.2d 283 (Va. 2008)

(upholding dismissal for lack of standing in a derivative action by a partner with economic interests antagonistic to the partnership).   In this case, CYSA is pursuing legal interests in its counterclaims that are antagonistic to those of Curtain, whom Defendants simultaneously purport to represent under its counterclaims.   CYSA has moved for summary judgment against Curtain to invalidate Curtain's trademark and other contractual rights.   Given CYSA's direct economic antagonism to Curtain in this case, demonstrated by its motion for summary judgment against Curtain, it cannot simultaneously serve as a representative of Curtain in this lawsuit.   <u>Cf</u>. Va. Rule Prof. Conduct 1.7 ("A concurrent conflict of interest exists if: (a) the representation of one client will be directly adverse to another client: . . ."   While this prohibition is subject to waiver, Rule 1.7(b)(3) states that waiver is only available if "the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal;").   CYSA is seeking summary judgment against Curtain's intellectual and contractual property rights in this same case.

Additionally, Fed. R. Civ. P. 23.1 provides that

a. . . . . The derivative action may not be maintained
if it appears that the plaintiff does not fairly and
adequately represent the interests of shareholders or
members who are similarly situated in enforcing the
right of the corporation of association.

b. The complaint must be verified and must:

    (1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;

    (2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and

    (3) state with particularity:

        (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

        (B) the reasons for not obtaining the action or not making the effort.

CYSA did not meet any of these requirements in filing its derivative counterclaim.  While CYSA asserts that making a demand upon Curtain would have been futile, this is an implausible position for a majority owner as CYSA, in all likelihood, would have been supportive of its own demand. Furthermore, the language of Virginia's derivative action statute has been construed as not to allow futility as an excuse for failure to make a demand.  Firestone v. Wiley, 485 F.Supp.2d 694, 701 (E.D. Va. 2007) (stating the necessity of the demand requirement and dismissing a derivative claim for failure to make a demand).

VA Code Ann. § 13.1-1042A parallels the provisions of Fed.
R. Civ. P. 23.1(a).  That statute provides that a "member shall
not commence or maintain a derivative action unless the member
fairly and adequately represents the interest of the limited
liability company in enforcing the right of the limited
liability company and is a proper plaintiff pursuant to section
13.1-1043."  Va. Code Ann. § 13.2-1042A.  In this case, CYSA is
a defendant seeking to terminate or narrow the intellectual
property and contractual rights of Curtain while at the same
time purporting to represent Curtain in its counterclaims.
Thus, CYSA could not be both a defendant and a proper plaintiff
on the same issues in this case, nor can CYSA fairly and
adequately represent the interests of Curtain.  In addition,
CYSA did not make written demand upon Curtain or wait the
mandatory ninety days before filing its counterclaims, as
required by Va. Code Ann. § 13.1-1042B, which also largely
parallels Fed. R. Civ. P. 21.1.

CYSA's failure to satisfy the demand and complaint
verification requirements are curable, but not at the time the
parties moved for summary judgment.  Under VA Code Ann. § 13.1-
672.1B.2, a derivative demand must afford the recipient
corporation ninety days in which to respond before a derivative
suit can be commenced.  This case was scheduled for trial on
September 26, 2011.  Had CYSA filed a written demand at the time

the parties moved for summary judgment, the ninety day period would continue long after the September 26 trial date, making a derivative claim here untimely and impossible.

Accordingly, Defendants are entitled to summary judgment on all Counts contained in Plaintiff's Complaint, Counterdefendants are entitled to summary judgment on all Counts contained in Defendants' Counterclaim, and Plaintiff's Cross-Motion for Summary Judgment will be denied.  An appropriate order shall issue.

```
                              _____/s/_____
                              Claude M. Hilton
                              United States District Judge
```

Alexandria, Virginia
November 29 , 2011