IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| OFFICE OF STRATEGIC SERVICES, INC., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:11cv0195 (CMH/JFA) |
| v. | ) ) | |
| STEVEN SADEGHIAN, *et al.*, | ) ) | |
| Defendants. | ) ) | |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

On April 15, 2014, this court granted defendants' motion to judicially terminate U.S.

Smoke and Fire Curtain, LLC and ordered the parties to appear before the undersigned

magistrate judge for the purpose of pursuing dissolution. (Docket no. 286). Pursuant to this

order, a status conference was set for August 1, 2014. (Docket no. 287). An evidentiary hearing

was held on Thursday, October 2, 2014, during which counsel offered exhibits into evidence,

examined witnesses, and provided argument as to an accounting of the assets and liabilities of

U.S. Smoke & Fire Curtain, LLC. Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned

magistrate judge is filing with the court his proposed findings of fact and recommendations, a

copy of which will be provided to all interested parties.

### I. Procedural and Factual Background

In 2009, Steven Sadeghian ("Sadeghian") and Stewart Christ ("Christ") formed U.S.

Smoke & Fire Curtain, LLC ("Curtain") with the goal of pursuing business opportunities

involving the distribution, sale, and installation of fire safety products. (Docket no. 1)

("Compl."). Sadeghian became the CEO of Curtain, and his company—CYSA Development

Management Corp. ("CYSA")—became the 51% shareholder. (Compl. ¶ 17). The minority 49% shareholder was Office of Strategic Services, Inc. ("OSS"), where Christ served as the President. (Compl. ¶¶ 2, 15). Christ also served as President of Curtain. (Compl. ¶ 19). On July 13, 2009, Curtain entered into a distribution agreement with Bradley Lomas Electrolok Limited ("BLE"), a British manufacturer of fire safety products. (Compl. ¶ 21). The distribution agreement provided that Curtain was the exclusive distributor of BLE products within the United States and prohibited Curtain from distributing competing products. (Compl. ¶ 22). Sadeghian signed the distribution agreement on behalf of Curtain and authorized Christ to secure and negotiate dealership agreements. (Compl. ¶¶ 24, 25). On July 17, 2009, Sadeghian formed U.S. Smoke and Fire Services, LLC ("Services") and allegedly began marketing and distributing products that Curtain maintained exclusive rights to under the BLE distribution agreement. (Compl. ¶¶ 9, 27). On February 25, 2011, OSS filed a shareholder derivative suit pursuant to Virginia Code § 13.1-1042 on behalf of Curtain against Sadeghian, CYSA, and Services. (Docket no. 1).

On November 29, 2011, this court granted defendants' motion for summary judgment on all counts set forth in the complaint and granted plaintiff's motion for summary judgment on the counterclaims asserted by the defendants. (Docket no. 146). On appeal, the Fourth Circuit vacated and remanded the district court's dismissal of plaintiff's breach of fiduciary duty claims and intellectual property claims regarding the "Elevator Shield" trademark and the defendants' direct counterclaims against OSS and Christ and their counterclaim seeking judicial termination of Curtain. *See Office of Strategic Servs., Inc. v. Sadeghian*, 528 F. App'x 336 (4th Cir. 2013) (Docket no. 204). At trial, plaintiff argued that Sadeghian breached his fiduciary duty when he chose to usurp business opportunities reserved for Curtain in order to benefit Services. Plaintiff

2

also alleged that CYSA directly participated in this breach for its own direct benefit and gain.

On February 20, 2014, a jury returned a verdict in favor of the plaintiff, awarding $200,000 in

compensatory damages and refusing to award any punitive damages. (Docket no. 271).

On April 15, 2014, this court denied plaintiff's motion to establish an equitable trust,

granted defendants' motion for judicial termination, and directed the parties to meet before the

undersigned magistrate judge for the purpose of pursuing dissolution of Curtain. (Docket no.

286). Prior to the status conference, plaintiff filed a motion to compel documents in response to

its second set of supplemental discovery requests. (Docket no. 288). On August 12, 2014, the

court granted the motion to compel in part and ordered that counsel advise the court as to their

availability for an evidentiary hearing. (Docket no. 297). The court subsequently set the

evidentiary hearing for October 2, 2014, and ordered the parties to file their proposed findings of

fact, witness lists, and copies of exhibits by 5:00 p.m. on September 18, 2014, with objections

due by 5:00 p.m. on September 25, 2014. (Docket no. 298). On October 2, 2014, counsel

appeared before the undersigned magistrate judge for an evidentiary hearing in order to

determine the proper means of dissolution with regard to Curtain.

## II. The Parties' Proposed Findings of Fact and Conclusions of Law

Having reviewed defendants' proposed findings of fact and conclusions of law (Docket

no. 309), defendants claim the following as the potential assets of Curtain: (1) $200,000

judgment entered in favor of the plaintiff in the derivative suit (Docket no. 285); (2) $305.36

held in a Northwest Federal Credit Union business savings account (Def. Ex. 4); (3) $94.12 held

in a Northwest Federal Credit Union basic checking account (*Id.*); (4) $13,014.35 held in a

Northwest Federal Credit Union money market account (*Id.*); and (5) potential recovery from a

lawsuit brought by OSS on behalf of Curtain against BLE that is on appeal before the United

States Court of Appeals for the Fourth Circuit. *See U.S. Smoke & Fire Curtain, LLC v. BLE*, No. 14-1558 (4th Cir.). Lastly, although defendants recognize that Curtain is the holder of United States Trademark Registration No. 3,867,681 for the "Elevator Shield" mark, they argue the trademark has no value because it has been not been used in commerce within the past three years and has otherwise been abandoned. (Docket no. 309 at 2, 6) (citing *Specht v. Google, Inc.*, 747 F.3d 929 (7th Cir. 2014)).

As set forth in their proposed findings of fact (Docket no. 309), defendants claim the following as potential liabilities of Curtain: (1) $127,865.42 in accrued and unpaid rent to Pinecrest, L.C. (Def. Exs. 8, 9, 10); (2) $1,240.42 due to CYSA for monies previously advanced by Curtain pursuant to the operating agreement (Def. Ex. 3) that have not been repaid[1]; and (3) $1,750 fee to prepare and file Curtain's final tax returns (Def. Ex. 7). Defendants also argue that in allocating the distribution award, the court should account for an improper early distribution taken by OSS in the amount of $15,000. (Def. Ex. 20).

Having reviewed plaintiff's proposed findings of fact and conclusions of law (Docket no. 303), plaintiff claims the following as potential assets of Curtain: (1) $200,000 judgment entered in favor of the plaintiff in the derivative suit (Docket no. 285); (2) $40,000 in payments to CYSA in the form of two checks issued from Curtain's bank account in 2012 (Pltf. Exs. 17, 18); (3) amounts held on behalf of Curtain in a bank account controlled by OSS (Docket no. 303 at 7); (4) amounts held on behalf of Curtain in a bank account controlled by Sadeghian (*Id.*); (5) an accounts receivable of $60,905 from Spilker Door, Inc., owed to Curtain for products provided (Pltf. Ex. 19); (6) tax benefits obtained by the defendants from the deduction of expenses related to various payments (Docket no. 303 at 8); (7) ownership of the federally registered "Elevator

---

[1] At the evidentiary hearing, the defendants submitted a revised Exhibit 23A reflecting their abandonment of the $1,240.42 claimed as additional amounts owed to CYSA for monies advanced to Curtain.

Shield" trademark (*Id.* at 7); and (8) potential recovery from a lawsuit brought by OSS on behalf of Curtain against BLE that is on appeal before the Fourth Circuit. *See U.S. Smoke & Fire Curtain, LLC v. BLE*, No. 14-1558 (4th Cir.).

As set forth in its proposed finding of fact (Docket no. 303), plaintiff claims that Curtain's only known liabilities are potential tax and product liability claims incurred by the defendants. (*Id.* at 8).

In its proposed finding of fact, plaintiff also claims that based on the verdict entered by the district court in the underlying litigation, defendants are liable to OSS for reasonable attorney's fees and costs incurred in bringing the derivative suit. *See* Va. Code Ann. § 13.1-1045. Plaintiff states that it has not filed a request for an award of attorney's fees and costs since the district court has yet to render a complete and final judgment. (Docket no. 303 at 8).

### III.  Evidence Presented & Proposed Findings of Fact and Recommendations

The court's role in this judicial dissolution proceeding is to determine Curtain's assets and liabilities in order to provide for an equitable distribution to the proper parties. *See* Va. Code Ann. § 13.1-1049. In addition to the submitted proposed findings of fact and conclusions of law, the parties presented additional argument and evidence during the evidentiary hearing on October 2, 2014. Pursuant to this court's order on August 18, 2014, the parties electronically filed a list of witnesses to be called at this hearing and delivered a copy of exhibits to the undersigned magistrate judge. Defendants objected to 15 of the plaintiff's 19 original exhibits and also objected to two supplemental exhibits offered at the evidentiary hearing. (Docket no. 308). Plaintiff filed objections to 15 of the defendants' 23 exhibits. (Docket no. 310). At the evidentiary hearing, all exhibits that were not objected to in a timely manner were admitted and became part of the record. As to defendants' exhibits, the court admitted into evidence Exhibits

5

1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 14, 17, 20, 21, 22, and 23A.  As to plaintiff's exhibits, the court

admitted into evidence Exhibits 1, 3, 17, 18, and 19.  The court also heard testimony from Steven

Sadeghian, CEO of Curtain and owner of CYSA Development Management Corp. as well as

Stewart Christ, President of Curtain and OSS.[2]  Below is a summary of the evidence presented

during the evidentiary hearing and the arguments presented by counsel concerning the disputed

assets and liabilities of Curtain.

### A. The Two $20,000 Checks Drawn on Curtain's Bank Account

In early 2012, Sadeghian drew two $20,000 checks on Curtain's SunTrust bank account

payable to CYSA Development.  (Pltf. Exs. 17, 18).  Plaintiff argues that at the time Sadeghian

signed these checks, legal proceedings were pending and Sadeghian had previously received a

written request not to disperse monies from the Curtain bank accounts without the mutual

consent of CYSA, OSS, and Christ.  Sadeghian admitted to receiving such a request and writing

the checks without giving notice to the other Curtain shareholder.  Plaintiff argues that these

checks allowed Sadeghian to "strip" all cash from Curtain bank accounts and direct funds into

his other businesses.  As a matter of equity, plaintiff argues that the two $20,000 payments made

to CYSA should be included in the assets of Curtain for purposes of dissolution.

Defendants argue that the checks drawn on the Curtain account were repayments for prior

loans made to Curtain under the terms of the operating agreement.  (Def. Ex. 3).  Paragraph 11 of

the operating agreement states, in relevant part:  "CYSA will provide additional financing for

USSFC as required, which shall be repaid to CYSA on mutually agreeable terms, within twelve

(12) months to the extent feasible."  (Def. Ex. 3, ¶ 11).  Sadeghian testified that CYSA advanced

monies to Curtain for several expenses in 2009, including but not limited to:  promotional

---

[2] All references to the record were obtained through the court's digital recording system.  Parties may order a
transcript or digital copy of these proceedings by contacting the Clerk's Office.

materials and supplies, legal services, administrative support, and insurance coverage. Sadeghian also testified that prior to the checks drawn on Curtain's bank account in February and April 2012, Curtain had not reimbursed CYSA for these loans. Sadeghian then identified the figure "$41,014" on page five of Curtain's 2009 tax return as the loans made from CYSA to Curtain. (Def. Ex. 12).

Recognizing that OSS did not agree to these payments when made, but accounting for language in the operating agreement and finding the testimony that CYSA advanced payments to Curtain for various operating expenses to be credible, the undersigned recommends a finding that the two $20,000 payments made to CYSA for reimbursement of operating expenses[3] in 2012 should not be included as an asset of Curtain for purposes of dissolution.

### B. The Three $5,000 Payments Made by BLE in 2010

In early 2010, Sadeghian became aware of Curtain's need for additional financing. Sadeghian allegedly spoke with Miles Carter, the Managing Director of BLE, in an attempt to secure additional funding for Curtain in the amount of $15,000. According to Sadeghian, BLE mistakenly transferred the first payment of $5,000 directly to OSS, but later corrected that error and the two remaining payments were transferred to Curtain's account. Sadeghian also provided notice to Christ and Bill Hartley, BLE's Controller, that the initial payment had been directed into the wrong account. (Def. Ex. 17). It was later brought to Sadeghian's attention that OSS withdrew $10,000 from Curtain's bank account at Northwest Federal Credit Union, which was initially opened and managed by Christ. (Def. Ex. 20). Defendants take the position that the $15,000—consisting of the $5,000 initial distribution from BLE to OSS and the $10,000 drawn out of Curtain's bank account—constitutes an improper early distribution. Accordingly,

---

[3] The evidence presented at the hearing revealed that in additional to operating expenses, a portion of the $40,000 paid to CYSA included $5,000 that Sadeghian believed was improperly paid to OSS. That item is discussed separately below.

defendants argue that CYSA is entitled to an additional $15,000 on top of the calculated distribution as part of the final accounting.

Plaintiff argues that the three additional payments of $5,000 each were part of a renegotiated agreement with BLE that extended the terms of the original distribution agreement. Under the terms of the distribution agreement, BLE agreed to tender payment directly to the account held by OSS for marketing administrative services and the establishment of a distribution network. (Pltf. Ex. 3, ¶ 5.4). Payment was to be made at $5,000 per month for a period of twelve months beginning on April 1, 2009. (*Id.*). However, the agreement also states, in part: "[f]or the payment of this $5,000 USD the Distributor will provide a monthly marketing report to include such as calls made, leads generated, marking activities, and general progress being made." As the distribution agreement makes clear, the "Distributor" is identified as "U.S. Smoke and Fire Curtain LLC." (*Id.* at ¶ (2)). Christ testified that towards the end of the twelve month period, he spoke with Miles Carter and Bill Hartley and discussed the possibility of additional payments to OSS. At that time, BLE was receiving positive results from the dealer network and the parties allegedly agreed it would be in their interest to continue building the dealer network by extending the terms of the initial agreement. Christ further testified that he prepared a 90 day invoice for BLE at Hartley's request, which provided for the three month extension at $5,000 per month. Thereafter, BLE tendered the first payment of $5,000 to OSS.

Recognizing the arrangement between BLE and OSS as set forth in the distribution agreement and based on the testimony provided that the marketing and dealership network services were provided by OSS, the undersigned recommends a finding that the three $5,000 payments should remain with OSS and that defendants are not entitled to recoup the $15,000 held by OSS in this dissolution proceeding. In finding the $5,000 payments to be properly

8

tendered to OSS, the undersigned also recommends that an additional $5,000 be tendered to OSS from Curtain's remaining assets during distribution. This additional distribution accounts for a portion of funds improperly drawn from Curtain's bank account and paid to CYSA in 2012.[4] In finding that CYSA did make several loans to Curtain pursuant to the operating agreement, the $20,000 checks—as an initial matter—were properly drawn on Curtain's bank account. However, the amount recouped should not include the $5,000 payment tendered to OSS by BLE.

As a final note on the recommended resolution of the two $20,000 payments made to CYSA in 2012 and the three $5,000 payments from BLE in 2010, at the evidentiary hearing the defendants did not present any argument on the item included in their proposed finding of fact requesting a distribution of $1,240.42 as an "amount remaining due to CYSA for monies advanced to Curtain." (Docket no. 309 at 4). In fact, defendants substituted a revised Exhibit 23A that deleted that item as a claimed liability owed to CYSA.

### C. The Spilker Door Inc. Account Receivable

In April 2011, Sadeghian sent notices to Curtain's dealers purporting to terminate their dealership agreements. One of the dealers who received a termination notice from Sadeghian was Spilker Door Inc. ("Spilker"). On April 30, 2011, Christ sent Spilker a notice allegedly rescinding the termination notice that was sent by Sadeghian and provided notice of two outstanding invoices in the amounts of $33,050 and $60,905. (Pltf. Ex. 19). While the parties did not dispute any amount currently owed with respect to the first invoice, plaintiff claims that the $60,905 invoice is an account receivable of Curtain and should be included as an asset for distribution purposes. (Docket no. 303 at 10). Sadeghian testified that Spilker made two $20,000 payments towards the second invoice in early 2012 and that those funds were deposited

---

[4] In defendants' proposed findings of fact and conclusions of law, defendants claim: "As of December 31, 2009, CYSA had advanced to or on behalf of Curtain $41,014. This includes $5,000 which was an early distribution taken by OSS from Curtain." (Docket no. 309 at 4).

into the Curtain accounts. According to Sadeghian, the project experienced "charge backs" and he has yet to receive the final $20,000 payment from Spilker even though he has been "chasing" Spilker for a long time. To the extent any remaining funds from Spilker are due and owing to Curtain, they should be considered an asset of Curtain. The undersigned recommends a finding that any payments received from Spilker relating to the outstanding invoice should be accounted for as an asset of Curtain and distributed based on ownership percentages as between CYSA and OSS.

### D. The "Elevator Shield" Trademark

When plaintiff filed this action, one of the potential assets of Curtain was the "Elevator Shield" trademark that has been registered with the U.S. Patent and Trademark Office. (Def. Ex. 6). The defendants, by presenting defenses to the trademark infringement claims asserted by the plaintiff and through the filing of counterclaims, sought to eliminate Curtain's proprietary interest in this mark by claiming the mark was invalid. The district court ruled initially that the trademark was invalid. (Docket no. 145 at 13). On appeal, the Fourth Circuit found that the district court erred in dismissing the Elevator Shield trademark claim asserted by the plaintiff based on the argument that the trademark was invalid. *See Office of Strategic Services, Inc. v. Sadeghian*, 528 F. App'x 336, 349–50 (4th Cir. 2013). Defendants now claim that this trademark has no value because it has been abandoned. (Docket no. 309 at 2, 6) (citing *Specht v. Google, Inc.*, 747 F.3d 929 (7th Cir. 2014)).

Plaintiff argues the Fourth Circuit's opinion prohibits the defendants from simply recasting their previous argument in a different proceeding. Plaintiff suggests the only prudent course with respect to this particular asset is to assign it to OSS, the entity that created it,

protected it, and defended it against the conflicted efforts of the defendants to strike it from the inventory of Curtain.

Defendants argue that the "Elevator Shield" trademark has been abandoned because Curtain has failed to use the mark in commerce since the termination of the BLE distribution agreement in July 2011. Following the termination of the BLE distribution agreement, Sadeghian attempted to gauge BLE's interest in purchasing the trademark. Sadeghian testified that in each instance, BLE representatives showed no interest in purchasing the mark. Sadeghian also testified that the mark has no value to CYSA. Defendants claim they have an interest in ensuring the trademark is not assigned to OSS based upon the belief that they could become the subject of a lawsuit alleging some perceived violation of the trademark, should this court decide to assign the mark to OSS.

Whether the "Elevator Shield" trademark does or does not have any market value or whether it has been abandoned is immaterial to this dissolution proceeding. At this point in time, Curtain is the owner of a federally registered trademark for "Elevator Shield." In the interest of resolving this dispute in an equitable manner, the undersigned recommends a finding that the trademark should be assigned to OSS and, recognizing the concerns of the defendants with respect to further litigation, the undersigned also recommends that OSS be ordered to provide CYSA with a non-assignable, royalty-free license to use the "Elevator Shield" mark.

**E. The Pending Lawsuit Against BLE**

On February 3, 2014, Curtain initiated a lawsuit against BLE in the Circuit Court for Fairfax County. The case was later removed to this court and ultimately dismissed based on a forum selection clause in the BLE distribution agreement. *See U.S. Smoke & Fire Curtain, LLC v. Bradley Lomas Electrolok, Ltd.*, No. 1:14-cv-0268-AJT-JFA, (E.D. Va. 2014), ECF No. 17.

That case is currently on appeal before the Fourth Circuit. *See U.S. Smoke & Fire Curtain, LLC v. BLE*, No. 14-1558 (4th Cir.). Defendants dispute the validity of that lawsuit, arguing that CYSA—as the majority shareholder of Curtain—never approved of its filing. Plaintiff argues that to the extent there is a net recovery from that litigation, any distribution to CYSA should be precluded by the "unfaithful servant doctrine." (Docket no. 303 at 10). Accordingly, plaintiff suggests the appropriate remedy in the dissolution proceeding is to assign that claim to OSS, thus precluding CYSA from obtaining any benefit from its initial breach.

Plaintiff's argument appears to be better categorized as one invoking the "faithless servant doctrine," a common law doctrine which originated in New York during the late 19th Century. *See Murray v. Beard*, 7 N.E. 553 (N.Y. 1886). While its application has taken hold in states such as California, Delaware, Georgia, Illinois, Maryland, Massachusetts, Missouri, New Jersey, Oregon, Pennsylvania, Texas, and the District of Columbia, there appears to be sparse support for the doctrine within the Commonwealth of Virginia.[5] Based upon the unsettled nature of the faithless servant doctrine in circumstances such as those presented in this case and its sparse support within the Commonwealth of Virginia, the undersigned recommends a finding that any net recovery (monies collected from BLE minus the fees and costs incurred in obtaining those sums) from the claim against BLE should be distributed based on ownership percentages as between CYSA (51%) and OSS (49%).

### F. Plaintiff's Claim for Attorney's Fees and Costs

While neither party disputes the fact that the $200,000 judgment entered by this court on April 15, 2014 is an asset of Curtain, counsel dispute whether the $200,000 judgment acts as a

---

[5] Plaintiff cites the decision in *Hartford Acc. and Idemn. Co. v. Cox*, 1988 WL 241123, *2 (E.D. Va. June 29, 1989) *aff'd*, 870 F.2d 654 (4th Cir. 1989) (unpublished opinion) in support of its position. A review of that decision reveals that it stands for the unremarkable principle that an employer who has paid an employee monies induced by fraud or misrepresentation may recover those sums from the employee.

cap on the amount of attorney's fees and costs that may be awarded. Plaintiff's position is that the defendants are liable for the reasonable attorney's fees and expenses incurred in bringing the derivative action since the plaintiff was a prevailing party under Virginia Code § 13-1045. (Docket no. 303 at 8). Plaintiff disagrees that the $200,000 judgment places a limit on the amount of fees that can be awarded, but recognizes that this issue cannot be resolved until a request for a fee award is presented to, and decided by, the District Judge. Defendants agree that this issue is best put aside until the District Judge rules on this issue upon the filing of a request for an award of attorney's fees and costs by the plaintiff. Recognizing that no request for attorney's fees has been filed with this court, the undersigned recommends a finding that this issue be addressed by the District Judge if and when the request is filed.

### G. Defendants' Tax Deductions

Plaintiff alleges that defendants obtained tax benefits from the deduction of expenses on various credit card and car payments and other transactions. (Docket no. 303 at 8). Plaintiff argues that these deductions should be included in the calculation of Curtain's assets because Sadeghian allegedly made these payments with funds that should have gone to Curtain. Defendants objected to this argument, contending the payments were not drawn from Curtain accounts. Instead, they were made through U.S. Smoke & Fire Services, LLC. Recognizing that these expenditures have no bearing on this dissolution proceeding and plaintiff has not presented any evidence as to how those deductions could be included as an asset of Curtain, the court recommends a finding that the tax deductions be excluded from any consideration in assessing the assets or liabilities of Curtain.

## H. Defendants' Claim for Unpaid Rent

In terms of liabilities, defendants allege that Curtain accrued $127,865.42 in unpaid rent during the two year term of the distribution agreement. (Docket. 309 at 3). Under the terms of the operating agreement, Curtain was obligated to maintain its principal place of business at 12310 Pinecrest Road, Suite 301, Reston, VA 20191 ("Suite 301"). (Def. Ex. 3, ¶ 7). Additionally, under the terms of the distribution agreement with BLE, Curtain was required to "[c]reate and develop a Product demonstration and training facility;" which Curtain established at 12310 Pinecrest Road, Suite 206, Reston, VA 20191 ("Suite 206"). (Def. Ex. 2, ¶ 4.1.12). In support of their claim for unpaid rent, the defendants introduced into evidence two unsigned lease agreements, both allegedly prepared by Sadeghian in 2009. (Def. Exs. 9, 10). Defendants argue that Sadeghian and Christ discussed these lease agreements and that Christ was on notice of their existence. To support this claim, defendants submitted a letter sent to OSS in October 2010 from Spicer & Associates, P.A. ("Spicer"), Curtain's outside accounting firm. (Def. Ex. 12). According to the terms of the letter, Spicer enclosed a copy of the "Schedule K-1" for Curtain, which included a copy of Curtain's unsigned 2009 tax return and made reference to "Rent" in the amount of $23,757. (*Id.*).

Plaintiff argues that the leases are unsigned, unauthenticated, and not legally enforceable. On direct examination, Christ testified that as the acting President of Curtain he was never presented with any lease agreement. The landlord for both Suite 301 and Suite 206 was Pinecrest, L.C. ("Pinecrest"), a family limited partnership managed by Sadeghian's family. Based upon Sadeghian's relationship with Pinecrest, and through conversations with Sadeghian, Christ believed there was a mutual understanding that Pinecrest was providing the space free of charge. Defendants argue that if such an understanding existed, it would have been

14

memorialized in either the operating or distribution agreement. Plaintiff accuses the defendants of manufacturing lease agreements in order to reduce the total amount to be distributed between CYSA and OSS and argues that defendants' failure to produce these documents prior to this evidentiary hearing, despite discovery orders issued by this court, is evidence of bad faith.

Recognizing that there was no signed lease agreement, no event of default, and no document purporting to extend these leases beyond the year in which they were allegedly consummated, the undersigned recommends a finding that the lease agreements are unenforceable and should be excluded from the liabilities of Curtain for purposes of dissolution.

### I. Curtain's Final Tax Return

In preparing for Curtain's eventual dissolution, Sadeghian contacted the company's accounting firm, Spicer & Associates, P.A. ("Spicer"). On August 29, 2014, Spicer sent a quote in the amount of $1,750 to process and prepare Curtain's final tax return. (Def. Ex. 7). Plaintiff offered no rebuttal estimate for the filing of a final tax return, but objected to admission of the letter on hearsay and relevance grounds. The court admitted the letter for the purpose of considering the approximate cost of preparing Curtain's final tax return. Although the letter sent by Spicer is merely a proposal, plaintiff offers no argument or evidence as to why such an estimate would be unreasonable. Based on the foregoing, the undersigned recommends a finding that the costs set forth in the letter sent by Spicer may be considered in assessing the liabilities of Curtain for the purpose of dissolution. If a final tax return can be prepared and filed for a lesser amount, any remaining sums should be distributed in accordance with the ownership percentages.

## IV. Recommended Accounting

| U.S. Smoke & Fire Curtain, LLC (Hard Assets) | Value |
|---|---|
| Judgment entered in favor of OSS (Docket no. 285) | $200,000.00 |
| M&T Bank, Advanced Business Checking (Def. Ex. 5) | $3,436.25 |
| Northwest Federal Credit Union, Business Savings Account (Def. Ex. 4) | $305.36 |
| Northwest Federal Credit Union, Basic Checking Account (Def. Ex. 4) | $94.12 |
| Northwest Federal Credit Union, Money Market Account (Def. Ex. 4) | $13,014.35 |
| Total Hard Assets | $216,850.08 |

| U.S. Smoke & Fire Curtain, LLC (Soft Assets) | Value |
|---|---|
| Account receivable from Spilker Door Inc. | $20,905.00 |
| Potential recovery from the lawsuit against BLE | unknown |
| Potential recovery of attorney's fees and costs | unknown |
| Trademark Registration for Elevator Shield | unknown |

| U.S. Smoke & Fire Curtain, LLC (Liabilities) | Value |
|---|---|
| Preparation of final tax return | $1,750.00 |
| Total Liabilities | $1,750.00 |

After accounting for Curtain's hard assets and liabilities, there is available for distribution to the members of U.S. Smoke & Fire Curtain, LLC the balance of $215,100.08 ($216,850.08 - $1,750).

CYSA is entitled to the following distribution of these hard assets:

Total due to CYSA = (51% of $215,100.08) – ($5,000) = **$104,701.04**

OSS is entitled to the following distribution of these hard assets:

Total due to OSS = (49% of $215,100.08) + ($5,000) = **$110,399.04**

In addition to the distribution of these hard assets, it is recommended that any monies received from Spilker Door Inc. be distributed as follows: 51% to CYSA and 49% to OSS. It is further recommended that any **net** recovery from the action brought against BLE be distributed as follows: 51% to CYSA and 49% to OSS. It is further recommended that the trademark registration for "Elevator Shield" be assigned to OSS and that OSS provide CYSA with a non-

16

assignable, royalty-free license to use the "Elevator Shield" mark.  The issue of any potential award of attorney's fees and costs will be considered by the District Judge once a request has been presented to the court.

### Notice

The parties are notified that objections to these proposed findings of fact and recommendations must be filed within fourteen (14) days of service of these proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of these proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on these proposed findings of fact and recommendations.

ENTERED this 22nd day of October, 2014.

_____/s/_____ JFA

John F. Anderson
United States Magistrate Judge

John F. Anderson
United States Magistrate Judge

Alexandria, Virginia